UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH LEWIS,<br><br>        Plaintiff,<br><br>vs.<br><br>DELTA AIR LINES, INC.,<br><br>        Defendant. | Case No. 2:14-cv-01683-RFB-GWF<br><br>**ORDER**<br><br>**Motion for In Camera Review (#41)** |

This matter is before the Court on Plaintiff's Motion Requesting an In Camera Review of Select Items From Defendant's Privilege Log (#41) filed on August 3, 2015. Defendant filed its Opposition (#46) on August 20, 2015, and Plaintiff filed his Reply (#47) on August 25, 2015. The Court conducted a hearing in this matter on September 4, 2015.

## BACKGROUND

Plaintiff Joseph Lewis alleges that Defendant Delta Airlines terminated his employment as an aviation maintenance technician because he has HIV and was absent from work on two occasions due to HIV related illness. *Complaint (#1)*. Mr. Lewis alleges causes of action for refusal to reasonably accommodate his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(b)(5)(A); wrongful termination on the basis of disability in violation of 42 U.S.C. § 12112; and violation of Nevada's Equal Employment Opportunity Act, NRS 613.310 et. seq. In the instant motion, Plaintiff requests that the Court conduct an *in camera* review of documents relating to communications between Defendant's employees and Defendant's in-house counsel for purposes of determining whether the crime-fraud exception to the attorney-client privilege applies. Plaintiff explains the basis of his motion as follows:

> . . . Delta was aware that the Plaintiff was suffering from HIV when he was fired, and Delta was also aware that the primary motivation to terminate Mr. Lewis was due to his disability-related absences on August 11th and 12th of 2012.  (Citations infra.)  Once Delta was put on notice that these absences were due to Plaintiff's HIV condition, a search ensued for an alternate theory of termination rather than the ADA-mandated employer led interaction to assist the Plaintiff in his illness.  Plaintiff believes that Delta counsel Giustina participated in this needle-threading exercise to intentionally breach the law and avoid ADA responsibility, and that her communications with the individuals effectuating Plaintiff's termination should be non-privileged as they were in furtherance of unlawful activity, the evasion of a statutory duty and possible fraud – and as a result he was denied his ADA protections and benefits Delta was obligated to honor as a matter of law.

*Motion for In Camera Review (#41), pgs. 3-4.*

## DISCUSSION

Plaintiff's claims for relief are primarily based on alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112.  The Court will therefore apply federal common law regarding the attorney-client privilege and the crime-fraud exception thereto.  *See* Fed.R.Evid. 501 and *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 2625 (1989).  The attorney-client privilege has been recognized as "' the oldest of the privileges known to the common law.'" *Id.*, quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682 (1981).  The central purpose of the privilege is "'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice.'" *Id.*, 491 U.S. at 562, 109 S.Ct. at 2625-26.  Clients must be free to make full disclosure to their attorneys in order to obtain competent legal advice. *Id.,* 491 U.S. at 562, 109 S.Ct. at 2626.  The attorney-client privilege is limited, however, by the crime-fraud exception which provides that the privilege does not apply to communications "'made for the purpose of getting advice for the commission of a fraud' or crime." *Id.*, 491 U.S. at 563, 109 S.Ct. at 2626.

"A party seeking to vitiate the attorney-client privilege under the crime-fraud exception must satisfy a two-part test.  First, the party must show that the 'client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme.'" *In re Napster, Inc. Copyright Litigation*, 479 F.3d 1078, 1090 (9th Cir. 2007), quoting *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir. 1988).  "Second, it must demonstrate that the attorney-

client communications for which production is sought are 'sufficiently related to' and were made '*in furtherance of* [the] intended, or present, continuing illegality.'" *Id.* The attorney need not have been aware that the client harbored an improper purpose. *Id.* In civil actions, where outright disclosure of the attorney-client communication is sought, the party asserting the crime-fraud exception has the burden of proving that the exception applies by a preponderance of the evidence. Both parties have the right to present evidence to the court with respect to application of the crime-fraud exception. *Id.*, 479 F.3d at 1098.

A lower threshold showing applies where the party asserting the crime-fraud exception initially requests only that the court conduct an *in camera* review of the allegedly privileged communications to determine if the crime-fraud exception applies. In *Zolin*, the Supreme Court stated that "disclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege." 491 U.S. at 568, 109 S.Ct. at 2629. The Court declined, however, to adopt a blanket rule that would allow a district court to conduct *in camera* review without any threshold showing because such a rule "would place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk" and would give rise to possible due process implications. The Court also noted the burden that *in camera* review places on district courts if they are required to evaluate large evidentiary records without open adversarial guidance by the parties. *Id.* The Court therefore held that the moving party must show a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies. *Zolin*, 491 U.S. at 572, 109 S.Ct. at 2631.

Plaintiff relies on *Koch v. Specialized Care Services, Inc.*, 437 F.Supp.2d 362 (D.Md. 2005) in arguing that the crime-fraud exception may be applied to the type of conduct alleged in this case. In *Koch*, the plaintiffs sold their insurance business to the defendant company. Pursuant to a related employment agreement, the principal plaintiff, "Koch," agreed to remain with the company for an additional three years unless terminated early. The employment agreement further provided that if Koch was fired without cause prior to expiration of the three year period, the company would pay him $6.25 million. If Koch was fired for cause or voluntarily resigned, however, he would only be

3

paid $1.00.  Koch alleged that the defendants falsely claimed that he resigned during a meeting on March 5, 2004 in order to avoid paying him the $6.25 million.  He sued the company for breach of contract and sued individual officers of the company for tortious interference with his employment agreement.  Koch moved to compel disclosure of communications between defendants and the company's in-house counsel relating to his termination and alleged resignation which he argued fell within the crime-fraud exception.

The claims at issue in *Koch* were governed by state law and the court therefore applied Maryland law with respect to the attorney-client privilege and the crime-fraud exception.  The court noted that in adopting the crime-fraud exception, the Maryland Court of Appeals cited with approval Section 82, the Restatement (Third) of the Law Governing Lawyers (2000) which defines the elements of the exception.  The commentary to Section 82 "defines fraud 'for purposes of the exception as requir[ing] a knowing or reckless misrepresentation . . . likely to injure another." 437 F.Supp.2d at 373.  Under Maryland law, "'[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment and fraudulent inducement.'" *Id.*  Although Koch's complaint did not allege a cause of action for fraud, it pled "an intentional tort involving misrepresentation, deception, and deceit [that] would appear to constitute fraud under the definitions in the Restatement and Maryland law." *Id.*  In holding that the crime-fraud exception could apply to the conduct underlying plaintiff's tort cause of action, the court stated that "courts increasingly focus on the conduct alleged.  The determinant of the exception's applicability is the wrongfulness of the conduct before the Court, not the form of its pleading."  *Koch*, 437 F.Supp.2d at 373.

The court noted that comment d. to Section 82 of the Restatement (Third) Law Governing Lawyers states:

> The evidence codes and judicial decisions are divided on the questions of extending the exception to other wrongs such as intentional torts, which, although not criminal or fraudulent have hallmarks of clear illegality and the threat of serious harm.  Legislatures and courts classify illegal acts as crimes and frauds for purposes and policies different from those defining the scope of the privilege.  Thus, limiting the exception to crimes and frauds produces an exception narrower than the principle and the policy would otherwise indicate.  Nonetheless, the prevailing view limits the exception to crimes and frauds. . . .

1    *Koch*, 437 F.Supp.2d at 375.

2    The court stated that this narrow construction of the exception was no longer the prevailing
view. In addition to citing, 8 Wigmore, *Evidence* § 2298 (McNaughton rev. ed. 1961) and other
legal commentators in support of a broader scope for the exception, the court stated that:

> A survey of case law demonstrates judicial willingness to expand the exception to the kind of conduct alleged here. *See Rambus, Inc. v. Infineon Technologies AG*, 222 F.R.D. 280, 288–89 (E.D.Va.2004) ("... other courts, when confronted with a variety of untoward conduct, have concluded that the exception is not confined to circumstances of crime or fraud."); *Cleveland Hair Clinic, Inc. v. Puig,* 968 F.Supp. 1227, 1241 (N.D.Ill.1996) (extending crime fraud exception to bad faith litigation misconduct); *Cooksey v. Hilton Int'l Co.,* 863 F.Supp. 150, 151 (S.D.N.Y.1994) (finding that "intentional torts moored in fraud can trigger the crime-fraud exception"); *Horizon of Hope Ministry v. Clark County, Ohio,* 115 F.R.D. 1, 5 (S.D.Ohio 1986) (extending crime-fraud exception to torts generally) (citing *In Re Sealed Case*, 737 F.2d 94, 99 (D.C.Cir.1984); *In Re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir. 1984); *In Re Grand Jury Proceedings,* 689 F.2d 1351, 1352 (11th Cir.1982)); *United Services Auto. Ass'n v. Werley,* 526 P.2d 28, 31 (Alaska 1974) (noting that privilege will not apply when actions are in furtherance of a crime or "other evil enterprise in concert with the attorney"); *Fellerman v.Bradley,* 99 N.J. 493, 493 A.2d 1239, 1245 (1985) (reading "fraud" expansively and "not limited to conventional notions of tortious fraud" so as to include "fraud upon the court"); *Volcanic Gardens Mgmt. Co., Inc. v. Paxson,* 847 S.W.2d 343, 348 (Tex. Ct.App.1993) (holding that fraud within meaning of crime-fraud exception to attorney-client privilege is broader than common law or criminal fraud and includes commission or attempted commission of fraud on the court or on a third person).

*Koch*, 437 F.Supp.2d at 376.

Other courts have followed *Koch* in holding that the crime-fraud exception is not strictly limited to cases alleging criminal violations or common law fraud. In *Safety Today, Inc. v. Roy*, 2013 WL 5597065 (S.D.Ohio 2013), the court, applying Ohio law, held that the exception could be applied to conduct underlying claims for tortious interference with contract or prospective business relations and defamation. The court cited other decisions which applied the exception in cases alleging claims for breach of fiduciary duty-self dealing, and civil rights conspiracy. *Id.*, at *4, citing *Euclid Retirement Village, Ltd. Partnership v. Griffin*, 2002 WL 12655570 (Cuyahoga Co.App. June 6, 2002) and *Horizon of Hope Ministry v. Clark County, Ohio*, 115 F.R.D. 1, 5 (S.D. Ohio 1986). In *In re Heraeus Klzer GMBH for an Order Pursuant to 28 U.S.C. § 1782*, 2012 WL

5

1493883 (N.D. Ind. 2012), the court held that the crime-fraud exception could be applied in a case alleging misappropriation of trade secrets.[1]

This Court concludes that *Koch* and the cases cited therein represent the better view regarding the scope of the crime-fraud exception in light of the principle and policy underlying both the privilege and the exception. This view also appears to be consistent with *In re Napster, Inc. Copyright Litigation*, 479 F.3d 1078 (9th Cir. 2007) which involved claims for copyright infringement. The plaintiffs in *Napster* alleged as grounds for the crime-fraud exception that the defendant committed "a fraud upon the court" by allegedly misrepresenting its relationship *vis a vis* Napster as a lender rather than as an owner with control over the entity. Although the plaintiffs failed to meet their burden of proving that the crime-fraud exception applied, the court treated their allegations "of fraud upon the court" as the type of conduct that could support application of the crime-fraud exception. *Id.*, at 1096-98.

In cases involving alleged employment discrimination under Title VII or the ADA, courts follow the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). *See Norton v. PHC-ELKO, Inc.*, 46 F.Supp.3d 1079, 1086 (D.Nev. 2014). Under this framework, the plaintiff is first required to establish a *prima facie* case of discrimination. With respect to an ADA claim, the plaintiff must show that (1) he is a disabled person within the meaning of the ADA, (2) that he was qualified, with or without reasonable accommodation, to perform the essential elements of his job, and (3) that he suffered an adverse employment decision because of his disability. *Id. See also Daniel v. Boeing Co.*, 764 F.Supp.2d 1233, 1241 (W.D.Wa. 2011), citing *Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351, 1353 (9th Cir. 1996). Once the plaintiff makes this *prima facie* showing, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for its decision. If the employer presents a legitimate and nondiscriminatory reason for its decision, then the burden shifts back to

---

[1] The District of Columbia Circuit has adopted a broader definition of the "crime-fraud" exception than that announced by other courts of appeal. In *In Re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1984), the court stated that communications otherwise protected by the attorney-client privilege are not protected if the communications were made "in furtherance of a crime, fraud or other misconduct." *See also In re Sealed Case*, 676 F.2d 793, 812 (D.C. Cir. 1982).

6

the plaintiff to show that the reason given by the employer is a pretext offered to conceal the discriminatory purpose. *Norton*, 46 F.Supp.3d at 1086, citing *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817.

A plaintiff can meet his burden of showing pretext by either direct or circumstantial evidence. "Direct evidence is evidence 'which if believed, proves the fact [of discriminatory animus] without inference or presumption.'" *Coghlan v. American Seafoods Co., LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005), quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998). Direct evidence typically consists of clearly discriminatory statements or actions of the employer. Circumstantial evidence, by contrast, is evidence that requires an additional inferential step to demonstrate discrimination. "Circumstantial evidence can take two forms. First, the plaintiff can make an affirmative case that the employer is biased. For example, statistical evidence is circumstantial evidence that could, if sufficiently probative, point to bias. (citation omitted.) Second, plaintiff can make his case negatively, by showing that the employer's proffered explanation for the adverse action is 'unworthy of credence.' *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089 (1989)." *Coghlan*, 413 F.3d at 1095. Where the plaintiff attacks the employer's proffered explanation as "unworthy of credence," the plaintiff accuses the employer either explicitly or by implication of providing a false explanation for its decision.

The allegation of "pretext" is fairly common in Title VII and ADA discrimination cases. It is also not unusual for employers to obtain legal advice before taking adverse employment action. Employers should be encouraged to do so because it tends to promote the observance of law and the administration of justice. *Zolin*, 491 U.S. at 562, 109 S.Ct. at 2625-26. Legal consultation may avert possible action that would be potentially unlawful. It is also appropriate for an employer to consult with counsel regarding the legal risks of taking certain action. On the other hand, legal advice might be obtained for the purpose of concealing the employer's true discriminatory intent and to make its decision appear legitimate. Although *in camera* review of attorney-client communications should not be triggered by the mere allegation that the employer's proffered reason was pretextual, the threshold showing required under *Zolin* is relatively low. *In camera* review of

the subject attorney-client communications is appropriate where the factual circumstances reasonably indicate that the attorney's advice *may* have been obtained or used to present a false explanation for the employer's adverse employment action.

      Although *Koch* did not involve a claim for employment discrimination under federal law, the circumstances of that case are similar to those in which an employee claims that the employer's decision was pretextual. In holding that the plaintiff had met his initial burden for *in camera* review under *Zolin*, the court found that documents produced by defendants indicated that Koch's termination was under serious consideration prior to the meeting at which defendants claimed he resigned. These included a statement in an email that the defendants should have a locksmith available when the meeting occurred and a statement by another defendant in response to an email sent by Koch, stating: "I find this response to be highly insubordinate. What do we need to do next. I want to escalate this." *Koch*, 437 F.Supp.2d at 377. In holding that these statements supported *in camera* review of the attorney-client communications, the court stated:

> Individually, these documents might not indicate any sinister or wrongful intent on the part of the defendants. However, together they indicate a hostile attitude toward Koch and a gathering plan to terminate him in spite of what defendants suggest. The documentation insinuates that defendants could have been engaging in a plan to rid SCS of Koch. As such, the Court concludes that plaintiffs have demonstrated an adequate factual basis to support a good faith belief that *in camera* review of the documents withheld by defendants on the basis of the privilege might reveal evidence to establish the crime-fraud exception, depriving otherwise privileged documents of their protection.

437 F.Supp.2d at 377-78.

      The records submitted by the parties in this case show that Plaintiff was issued a final warning by his supervisor on February 22, 2012 for unacceptable tardiness and absences from work. *Opposition (#46), Exhibit 1.* Plaintiff subsequently went on FMLA leave during which he was diagnosed with HIV in May 2012. He was given a return to work slip without restriction by his doctor on July 5, 2012. *Id., Exhibit 2.* Although Plaintiff did not require any accommodation to perform his job when he returned to work in July, he was allegedly denied a refill for one of his prescriptions in late July 2012 which caused him to become ill in the following two week period. On August 10, 2012, Plaintiff was reportedly late for work because he forgot his employee badge.

8

On August 11, 2012, Plaintiff arrived late to his work area and then remained in the bathroom until he left with permission at 4:00 P.M. Plaintiff was also out of work due to sickness on August 12, 2012. On August 20, 2012, Plaintiff's manager Kirk Kozy told Defendant's HR employee Lisa Todd that he wanted to hold Plaintiff accountable for his most recent absences. Ms. Todd thereafter conferred with the EO manager JoAnne Guerrant. Ms. Todd sent an email to Guerrant on August 20, 2012 in which she stated that Kozy "continues to see the same pattern that has always existed with [Plaintiff's] attendance and would like to progress him if appropriate. *Opposition (#46), Exhibit 1 to Exhibit B.* In a follow-up email a few minutes later, Ms. Todd stated: "One more thing JoAnne. For his tardy on 8/6, he was 30 to 45 minutes late and while he explained to his lead he was going to be late, he signed in as though he arrived on time. He (sic) leader said the expectation on this are clear, if you arrive late, you sign in when you arrive, not when you should have. He has had a history of this type of behavior in 2010 and this was addressed by his leader at the time." *Id.* Ms. Todd testified that based on her communications with Ms. Guerrant, it was determined that Plaintiff's August 2012 absences would not be a factor in any disciplinary action against him. After conferring with Defendant's in-house counsel Kelly Giustina through emails between August 28 and September 11, 2012, the decision was made to terminate Plaintiff based on his providing false information as to when he "clocked-in" to work. On September 14, 2012, Ms. Todd informed Plaintiff's supervisor Kirk Kozy by email as follows:

> It has been determined that the employee should be asked to resign specifically because he recorded and was paid for time that he did not actually work and for failure to be forthcoming during the investigation. If the employee refuses to resign, their employment should be terminated.

*Opposition (#46), Exhibit 2 to Exhibit B.*

Plaintiff argues that the foregoing reason for terminating his employment was pretextual and that Defendant's true reason for firing him was his HIV disability and Defendant's unwillingness to provide accommodation for that condition. As evidence that Defendant's true motive was to fire Plaintiff for his HIV related absences, Plaintiff cites Kirk Kozy's August 23, 2012 email to Lisa Todd in which he stated: "Take a look at the questionnaire and see what you think. I want to ask something about the two days he used sick leave but don't know how to do it with out digging too

deep. If you come up with something around that I'd like to add it. Whatever you think is appropriate." *Motion (#41), Exhibit G*. In addition to the specific facts of this case, Plaintiff argues that Defendant has a track record of discriminating against its customers, employees or job applicants because of disability or HIV status. *See Reply (#47), Exhibit A*. Plaintiff's summary of prior instances of discrimination, with the exception of two reported cases, is not documented or verified. The Court therefore accords this information no weight in deciding whether to grant *in camera* review.

### CONCLUSION

The Court finds that Plaintiff has raised a sufficient factual issue regarding whether the Defendant's announced reason for terminating Plaintiff's employment was false such as to justify *in camera* review of the communications between Defendant's employees and Defendant's in-house counsel between August 28 and September 11, 2012. To be clear, the record presently before the Court does not support a finding of fraud or wrongful conduct by Defendant by a preponderance of the evidence. The Court therefore makes no determination in advance of *in camera* review as to whether the attorney-client communications should be disclosed to Plaintiff based on the crime-fraud exception. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion Requesting an In Camera Review of Select Items From Defendant's Privilege Log (#41) is **granted.** On or before **January 4, 2016**, Defendant shall deliver to the Court's chambers for *in camera* review, the email communications between Defendant's employees and its in-house counsel, Kelly Giustina, relating to the Defendant's termination that occurred from August 28, 2012 and September 11, 2012.

DATED this 23rd day of December 2015.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge