UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOSEPH LEWIS,<br>　　　　　Plaintiff,<br>　v.<br>DELTA AIR LINES, INC.,<br>　　　　　Defendant. | Case No. 2:14-cv-01683-RFB-GWF<br>**ORDER**<br>**Damages & Attorney Fees** |

## I.　INTRODUCTION

Before the Court is Plaintiff's Motion for Damages and Recovery (ECF No. 184) and Defendant's Motion to Allow Consideration of Aviation Institute Maintenance Records in Post-Trial Briefing (ECF No. 174). For the reasons discussed below, the Motion for Damages and Recovery is granted in part and denied in part and the Motion to Allow Consideration of Aviation Institute Maintenance Records in Post-Trial Briefing is denied.

## II.　PROCEDURAL BACKGROUND

Plaintiff Joseph Lewis filed a Complaint against Delta Airlines on October 14, 2014. ECF No. 1. Plaintiff brought three claims against Delta: a claim for Failure to Accommodate, under the Americans with Disabilities Act ("ADA"); a claim for Wrongful Termination on the Basis of Disability, under the ADA; and a claim for Unlawful Discriminatory Employment Practices, under NRS 613.31, the Nevada Equal Employment Opportunity Act. On September 22, 2016, the Court denied summary judgment as to Plaintiff's accommodation claims related to his two absences, under the ADA and NRS 613.31, and as to his wrongful termination claims. ECF No. 91. The Court presided over a jury trial on these claims during the week of October 16, 2017. At the conclusion of trial, the jury found for the Plaintiff on both claims and awarded him $480,000 in

compensatory damages and $800,000 in punitive damages. ECF No. 169. On October 23, 2017, the Court held a hearing on the issue of damages, at which Plaintiff and his expert witness testified. ECF No. 175. On October 30, 2017, Defendant filed a Motion to Allow Consideration of Aviation Institute Maintenance Records in Post-Trial Briefing. ECF No. 174. On December 18, 2017, Plaintiff filed a Motion for Damages and Recovery. ECF No. 184.

### III. FINDINGS OF FACT

When calculating equitable damages, the Court must make sufficient findings of fact that satisfy the requirements of Fed. R. Civ. P. 52(a). Amantea-Cabrera v. Potter, 279 F.3d 746, 750 (9th Cir. 2002). Rule 52(a)(1) requires the Court to "find the facts specially and state its conclusions of law separately." Id. The court must state findings sufficient to indicate the factual basis for its ultimate conclusion. Kelley v. Everglades Drainage District, 319 U.S. 415, 422 (1943). The findings must be "explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." United States v. Alpine Land & Reservoir Co., 697 F.2d 851, 856 (9th Cir. 1983), cert. denied, 464 U.S. 863 (1983) (citations omitted). Accordingly, having reviewed the evidence and observed the witnesses related to the issue of damages, the Court makes the following findings of fact in this case.

1. Joseph Lewis ("Lewis") started working for Delta Airlines ("Delta") as an Aircraft Maintenance Technician in 2000. He transferred to Las Vegas in 2008.
2. Lewis was suspended without pay on August 29, 2012.
3. Lewis was terminated from Delta on September 14, 2012.
4. Delta intentionally wrongfully terminated Lewis based on his disability, HIV.
5. Lewis filed a claim with the EEOC on February 22, 2013.
6. Lewis' base salary was approximately $78,000 per year when he was terminated from Delta. Lewis occasionally earned overtime hours at Delta. Delta also provided Lewis with health insurance and other fringe benefits.
7. After Lewis' employment with Delta was terminated, he exercised reasonable diligence in

attempting to find substantially equivalent employment, including applying broadly to jobs in the aviation field, and accepting employment for periods of time at Aviation Institute of Maintenance, Allegiant Airlines, and Gulfstream Aerospace in positions that were inferior in pay and responsibilities to his previous position at Delta.

8. On or about March 1, 2016, Lewis commenced employment with Federal Express Corporation ("FedEx"). Lewis' position at FedEx is substantially equivalent to his previous position at Delta.

9. Lewis' starting salary at FedEx was $98,028.00 per year. FedEx does not pay Lewis overtime. FedEx does provide Lewis with health insurance and other fringe benefits.

10. Had Delta not terminated Lewis, Lewis would have earned approximately $734,385 in wages and benefits between his last day of work on August 29, 2012 and the date of this Order.

11. Instead, Lewis earned approximately $373,582 in wages and benefits between August 29, 2012 and the date of this Order.

12. Between Lewis' last day of work at Delta on August 29, 2012 and the date of this Order, Lewis lost approximately $360,803 in wages and benefits.

13. Had Delta not terminated Lewis, Lewis would have received approximately $80,593 in bonuses between August 29, 2012 and the date of this Order. Lewis did not earn any bonuses during that time period.

14. Lewis' wages and benefits at FedEx will exceed the wages and benefits he would have earned at Delta in approximately 2025. From the date of this Order until that time, Lewis will lose approximately $50,607 in wages and benefits.

15. It would be inappropriate and unfeasible for Delta to reinstate Lewis to his previous position at this point in time. Due to the circumstances of his termination, the time that has passed since he was terminated, and the need to pursue litigation in order to be compensated for his losses, the relationship between Lewis and Delta has significantly deteriorated to the point that it would be virtually impossible for the parties to establish a professional working relationship again in the future.

# IV. CONCLUSIONS OF LAW

## A. Compensatory and Punitive Damages

### i. Legal Standard

Under the ADA, the sum of the compensatory and punitive damages awarded can be no greater than $300,000 against an employer with over 500 employees. 42 U.S.C. § 1981a(b)(3).

### ii. Discussion

The jury awarded $480,000 in compensatory and $800,000 in punitive damages against Delta. The parties agree that the statutory cap should apply, and the award of compensatory and punitive damages shall be limited to $300,000.

## B. Back Pay

### i. Legal Standard

The ADA expressly incorporates the remedies available under Title VII of the Civil Rights Act of 1964, including 42 U.S.C. § 2000e-5. 42 U.S.C § 12117(a). Pursuant to this section, "[i]f the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint," the court may order any equitable relief appropriate, including back pay. 42 U.S.C. § 2000e-5(g)(1). Back pay is an equitable remedy to be determined by the district court in its discretion, rather than by a jury. Lutz v. Glendale Union High Sch., Dist. No. 205, 403 F.3d 1061, 1069 (9th Cir. 2005). There are some limitations on the Court's discretion, however. "Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(1). Absent compelling circumstances, the award of back pay should be calculated from the date of the discriminatory act to the date of final judgment. Thorne v. El Segundo, 802 F.2d 1131, 1136 (9th Cir. 1986).

Plaintiff has a duty to mitigate his damages and the Court should not award back pay for periods when Plaintiff did not exercise reasonable diligence to find substantially equivalent employment. Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1497 (9th Cir. 1995). However, the

burden is on the employer to prove that the plaintiff failed to mitigate. Id. To satisfy this burden, the employer must prove that during the time in question there were substantially equivalent jobs available, which the plaintiff could have obtained, and that the plaintiff failed to use reasonable diligence in seeking and maintaining one. Id.

Additionally, post-judgment interest must be granted in cases awarding back pay at the rate established in 28 U.S.C. § 1961. Van Asdale v. Int'l Game Tech., 763 F.3d 1089, 1092 (9th Cir. 2014). The Ninth Circuit recently held that courts in Title VII cases may also award tax "gross-ups" to counteract any negative tax impacts that result from receiving damages as a lump sum, rather than gradually over time, and ensure that the plaintiff is fully made whole. Clemens v. CenturyLink Inc., 874 F.3d 1113, 1116 (9th Cir. 2017).

### ii. Discussion

The Court finds that Plaintiff is entitled to a back pay award including lost wages and benefits that he would have earned between his last day of work at Delta and the date of this Order, at which point final judgment in this case shall be entered. The Court also finds that Plaintiff is entitled to lost bonuses that he would have received had he remained employed at Delta during this period. In making these determinations, the Court has reviewed the evidence and finds that Plaintiff and his expert, Dr. Thomas Carroll, provided credible arguments and reliable evidence including payroll information, publicly available information regarding Delta's pay raise and bonus policies, and reasonably reliable statistical information to make approximations of Plaintiff's lost wages, benefits, and bonuses during this period. Further, Defendant has not met its burden of proving that Plaintiff failed to mitigate his damages.[1] Instead, the Court finds that Plaintiff exercised reasonable diligence to mitigate his damages by applying broadly to positions in the aviation field, accepting multiple positions that were inferior in wages and responsibilities to his previous position at Delta, and obtaining substantially equivalent employment at FedEx prior to the commencement of trial in this case. The Court will subtract the amount that Plaintiff earned

---

[1] The Court will not take into account the hearsay evidence Defendant has offered regarding the reasons for Plaintiff's termination from Aviation Institute of Maintenance. Absent live testimony or the opportunity for cross examination, the Court does not find those records to be reliable or sufficient for the Court to make a determination regarding the Plaintiff's alleged failure to mitigate during that time period.

through mitigating employment from the back pay award. The Court will also grant Plaintiff post-judgment interest as specified in § 1961 and a tax gross-up in accordance with the Ninth Circuit's recent decision in <u>Clemens,</u> to ensure he is fully made whole. <u>Clemens</u>, 874 F.3d at 1116.

**C. Front Pay**

*i. Legal Standard*

"[F]ront pay is an award of future lost earnings to make a victim of discrimination whole." <u>Cassino v. Reichhold Chem.</u>, 817 F.2d 1338, 1346 (9th Cir. 1987). Front pay, like back pay, is an equitable remedy that the Court may award if it finds that reinstating the employee with his or her previous employer is inappropriate, "such as where no position is available, or the employer-employee relationship has been so damaged by animosity that reinstatement is impracticable." <u>Traxler v. Multnomah County</u>, 596 F.3d 1007 (9th Cir. 2010). Front pay awards must also be reduced by the amount the plaintiff could earn using reasonable mitigation efforts. <u>Cassino</u>, 817 F.2d at1347.

*ii. Discussion*

As stated above, the Court finds that reinstatement is an inappropriate and unfeasible remedy here, due to the deterioration of the relationship between the parties. Instead, the Court finds it appropriate to give Plaintiff an award of front pay. Although Plaintiff has mitigated his losses by obtaining comparable employment at FedEx, the Court finds that for the next several years, Plaintiff's estimated wages and benefits will be less than what he would have earned had he not been terminated from Delta. The Court finds that by the year 2025, Plaintiff's wages and benefits at FedEx will exceed what he would have earned at Delta. Therefore, the Court will award Plaintiff his lost earnings up until that time. The Court does not find it unduly speculative to assume that Plaintiff would likely have remained employed at Delta for the next seven years, in the absence of his wrongful termination. The Court does find Plaintiff's estimated lost future bonuses to be overly speculative, however. Delta's bonus and profit-sharing policies have varied over the years, based on the company's profitability and performance. Plaintiff and his expert have collected reasonably reliable publicly available information relating to Delta's bonus and profit-sharing policies in the time since Plaintiff's termination, such that the Court found it appropriate to include

an award of lost bonuses with Plaintiff's back pay. However, it is unreasonable to assume that these policies will continue for the next several years. Therefore, the Court will not include an award of lost future bonuses in the front pay calculation.

### D. Out-of-Pocket Costs

Plaintiff seeks $85,040 in "out-of-pocket" expenses that he personally lost as a result of his termination from Delta. At trial, Plaintiff requested to have these expenses submitted to the jury as pecuniary compensatory damages, but the Court ruled that Plaintiff had not submitted sufficient specific evidence for the jury to adequately make a determination regarding the amount of pecuniary losses sustained by Plaintiff. Plaintiff has not submitted any additional specific documentary evidence of these expenses, but only references his general testimony regarding these losses at trial. The Court does not find that it has a sufficient basis to grant these expenses and will not award out-of-pocket pecuniary damages to Plaintiff.

### E. Attorney Fees and Costs

#### *i. Legal Standard*

Courts use the Lodestar method to determine the amount of reasonable attorney fees to award in a civil rights case. To determine the Lodestar, the Court multiplies the number of hours reasonably expended on the case by the market rate "prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987). The burden is on the fee applicant to produce evidence that demonstrates that the requested hours and hourly rates are reasonable. Id. Factors the Court may consider in reducing the number of hours reasonably expended include inadequate documentation, overstaffing of the case, and the relative novelty and complexity of the issues raised. Cunningham v. County of Los Angeles, 879 F.2d 481, 484-85 (9th Cir. 1989) (citations omitted).

Once the Lodestar figure has been calculated, the Court then determines whether it is necessary to adjust this amount upwards or downwards based on the Kerr factors:
> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the

> preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951, 48 L. Ed. 2d 195, 96 S. Ct. 1726 (1976). As the first five Kerr factors are subsumed by the Lodestar calculation, the later factors are the primary focus at this stage. Morales v. City of San Rafael, 96 F. 3d 359, 364, n.9 (9th Cir. 1996).

### *ii. Discussion*

Plaintiff's counsel request $802,003.00 in attorney fees for Stone & Woodrow and $12,600 for local counsel, Mr. Segerblom. This total is based on Stone & Woodrow's reported 2,338 hours spent on this case and requested rates of $485/hour for Mr. Stone and $300/hour for Mr. Woodrow, and Mr. Segerblom's reported 36 hours spent on this case at $350/hour. Plaintiff's counsel have submitted declarations and itemized invoices of fees and costs. ECF No. 184, Exs. F and G. Stone & Woodrow also request $ 11,117.40 in costs under Fed. R. Civ. P. 54(d). Having reviewed counsel's declaration, the Court finds it appropriate to reduce the hourly billing rate slightly for both Mr. Stone and Mr. Woodrow. Counsel did not provide significant evidence of the prevailing rate in the community for similar legal work, other than their own estimations of what seems reasonable and, in the case of Mr. Stone, the amount charged by opposing counsel, Mr. Mahoney. Therefore, based on similar cases in this district, the Court finds that a more reasonable rate for an experienced partner such as Mr. Stone is $450/hour, and a more reasonable rate for a newer associate such as Mr. Woodrow is $250/hour. See, e.g., Wysocki v. Dourian, 2017 U.S. Dist. LEXIS 174004, at *9 (D. Nev. Oct. 20, 2017); see also Sinanyan v. Luxury Suites Int'l, LLC, 2016 U.S. Dist. LEXIS 109890, at *12 & n.4 (D. Nev. Aug. 17, 2016) (collecting cases). Having reviewed the proposed hours, the Court will defer to counsel on the time necessary to successfully litigate this case. The Court is not convinced by Defendant's arguments that Plaintiff's counsel overstaffed or spent excessive time researching and drafting motions. Counsel litigated this case for years and were able to survive dispositive motions and eventually achieve success on most

claims at trial, overcoming complicating factors such as Plaintiff's various negative employment evaluations to prove but-for causation to the jury. Multiplying the adjusted hourly rates by counsel's reported hours, the updated Lodestar figure for Mr. Woodrow and Mr. Stone is $686,960.

Turning to the Kerr factors, the Court does not find a basis to decrease or increase the Lodestar figure in this case. As previously stated, counsel achieved success on most claims and the Lodestar figure is less than Plaintiff's total damages. Although the legal issues presented were not particularly novel or difficult, counsel did have to contend with certain negative facts for their client, such as his inconsistent employment history and testimony from coworkers and supervisors regarding his lack of professionalism. Overcoming these facts to prove pretext and but-for causation took time and effort on behalf of counsel. Considering these factors, the Court will grant Plaintiff's counsel the full Lodestar amount. This amount should be sufficient to compensate Plaintiff's counsel for their time and encourage them to undertake similar legal work in the future. The Court also finds the requested amounts for local counsel, experts, other legal assistance, and statutory costs to be reasonable.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Motion for Damages and Recovery (ECF No. 184) is GRANTED in part and DENIED in part as follows:

- The jury verdict is capped at $300,000 in compensatory and punitive damages.
- Plaintiff is awarded $441,396 in back pay.
- Plaintiff is awarded $50,607 in front pay.
- Plaintiff is awarded $68,212 in interest on back pay and a tax gross-up of $34,495.
- Attorney fees are granted in the amount of $686,960 for Stone & Woodrow and $12,600 for Segerblom. The Court also grants $11,117.40 for statutory costs, $7,875 for Carroll, and $12,000 for Sloan.

**IT IS FURTHER ORDERED** that Defendant's Motion to Allow Consideration of Aviation Institute Maintenance Records in Post-Trial Briefing (ECF No. 174) is DENIED.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment for the Plaintiff and close this case.

DATED: September 19, 2018.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**